## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **IDELL DEARRY, *et al*.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:21-cv-02548 (MAK)** |
| | ) | |
| **SOAREN MANAGEMENT, LLC, *et al*.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants, Kraken Holdings, LLC ("Kraken"), Andrew Dunn ("Dunn"), and Joshua Bickerstaff ("Bickerstaff") (collectively "Defendants"), submit this memorandum in support of their Motion to Dismiss the Complaint filed by Plaintiffs Idell Dearry and Penny Green ("Plaintiffs") pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiffs' Complaint purports to describe a "rent-a-tribe" scheme whereby defendants allegedly profited from loans made by Pine Tree Lending, LLC ("Pine Tree Lending"), an entity established by the Passamaquoddy Tribe of Indian Township, which is a federally-recognized American Indian tribe located in Maine (the "Tribe"). This Court, however, does not have personal jurisdiction over Kraken, Dunn, or Bickerstaff. None of those three parties have any contacts with Pennsylvania, nor does the Complaint allege any such contacts. All three are located in Arizona and previously managed or worked for another former defendant, Soaren Management, LLC ("Soaren"),[1] which was a Delaware limited liability company with its principal place in Arizona

---

[1] As explained in the Declaration of Andrew Dunn, attached as **Exhibit 1**, Soaren merged into a tribal entity, Pinnacle Acquisitions, LLC ("Pinnacle"), on June 1, 2020, and Pinnacle was the surviving entity.

before it was merged out of existence. The Complaint wholly fails to allege that Kraken, Dunn, or Bickerstaff engaged in any activities directed at Pennsylvania.

When it comes to the claims themselves, Plaintiffs try to use the same playbook used in other cases challenging loans made by tribal entities. But unlike many of those cases, Plaintiffs do not support their sweeping and scandalous assertions of wrongdoing with factual allegations necessary to assert actionable claims against these Defendants. Indeed, Plaintiffs plainly hope that broad proclamations – devoid of factual support – will be enough to bluff their way past the initial pleading stage. For instance, the primary allegations are based "upon information and belief," defendants are lumped together using "group pleading," and the majority of the Complaint discusses alleged bad acts and *other* tribal lending cases that have *nothing* to do with the Tribe or any of the Defendants. In fact, Plaintiffs admit that they do not even know whether Defendants or third parties engaged in the debt collection activities at issue.

The only reasonable conclusion from these allegations is that these parties are defendants in this lawsuit merely because they managed or worked for Soaren. The lack of factual allegations regarding Kraken, Dunn, and Bickerstaff requires dismissal of the claims against them.

## STATEMENT OF ALLEGATIONS

Plaintiffs are residents of Pennsylvania. (Compl. ¶¶ 9-10.) They each applied for and received a loan with Pine Tree Lending, LLC (an LLC established by the Tribe) using Pine Tree Lending's website, www.clarityfinance.com. (*Id*. ¶¶ 19, 56-68, 36.) As part of the lending process, co-Defendant FactorTrust, Inc. ("FactorTrust") provided a credit report on each Plaintiff to Soaren, which Pine Tree Lending hired to provide loan servicing support. (*Id*. ¶¶ 51-55, 101.) Each Plaintiff made payments on her loan with Pine Tree Lending via an ACH protocol allegedly arranged and managed by the "Soaren Defendants" (defined by Plaintiffs as Soaren, Kraken, Dunn,

and Bickerstaff.) (*Id*. ¶¶ 59, 62, 15.) Most of the interest paid by Plaintiffs to the Tribe purportedly "ended up as revenue to [Soaren] and [Kraken]." (*Id*. ¶ 6.) Although Plaintiffs' loans were with Pine Tree Lending, Plaintiffs allege that Dunn and Bickerstaff were "responsible for designing, organizing, and implementing" Pine Tree Lending's operation. (*Id*. ¶¶ 49, 101.) Plaintiffs surmise that Pine Tree Lending's website "for all practical purposes … was in fact controlled by and for the profit of [Soaren and Kraken]." (*Id*. ¶ 4.)

Plaintiffs allege that their loans with Pine Tree Lending are unlawful because the interest rate under their loans exceeds the maximum rate allowed under Pennsylvania law, though the loans state that they are governed by the law of the *Tribe*. (*Id*. ¶¶ 69-73.) Plaintiffs accuse the Soaren Defendants of being part of, and controlling, a racketeering enterprise, the purpose of which was "the enrichment of the [Soaren Defendants] through the collection of unlawful debt." (*Id*. ¶ 104.) They also claim that the Soaren Defendants participated in the enterprise through a pattern of wire fraud. (*Id*. ¶¶ 112-13.) Plaintiffs allege that they were the victim of deceptive and abusive debt collection practices regarding their loans, though they admit that they cannot identify the entity that engaged in these alleged practices. (*Id*. ¶¶ 7, 126.)

Plaintiffs are seeking to represent themselves and a class of certain persons who obtained loans from Pine Tree Lending with respect to the following claims: violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO" or "RICO Act") (Counts One and Two); conspiracy to violate the RICO Act (Count Three); violations of the Fair Debt Collection Practices Act ("FDCPA") (Count Four); and unjust enrichment (Count Five).

<u>**ARGUMENT**</u>

**I.     The Court lacks personal jurisdiction over Dunn, Bickerstaff, and Kraken.**

**A.     Standard of Review.**

A court may have either general or specific jurisdiction over a defendant. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009).

General jurisdiction is only appropriate if a defendant corporation's "affiliations with the [forum] State are so continuous and systemic as to render [it] essentially at home in the forum State." *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 463-64 (E.D. Pa. 2019). "To assert general jurisdiction in Pennsylvania over an individual, a plaintiff bears the burden of proving the individual's presence or domicile in the Commonwealth at the time of service, or the individual's consent to suit." *Comerota v. Vickers*, 170 F. Supp. 2d 484, 487 (M.D. Pa. 2001); *accord Decker v. Dyson*, 165 F. App'x 951, 953 (3d Cir. 2006) ("Under Pennsylvania law, general jurisdiction arises over an individual, non-corporate defendant if the person's domicile or presence was in the state at the time of service of process, or there was consent to suit.").

For a court to assert specific jurisdiction over a defendant, the defendant must have: (a) purposefully directed activities at the forum state; (b) the litigation must arise out of or relate to at least one of those activities; and (c) if the first two requirements have been met, a court may consider whether the exercise of jurisdiction otherwise comports with fair play and substantial justice. *See D'Jamoos*, 566 F.3d at 102.

On a motion challenging jurisdiction under Fed. R. Civ. P. 12(b)(2), a plaintiff bears the burden "of establishing personal jurisdiction by a preponderance of the evidence and must do so by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Turner v. Prince George's County Public Schools*, 694 Fed. App'x 64, 66 (3d Cir.

2017) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Where defendants submit evidence "rais[ing] a personal jurisdictional defense, the burden shifts to the plaintiff to prove that the relevant jurisdictional requirements are met." *Corr. Med. Care, Inc. v. Gray*, 2008 U.S. Dist. LEXIS 6596, at *18 (E.D. Pa. Jan. 30, 2008). "The plaintiff must sustain its burden of proof through 'sworn affidavits or other competent evidence.'" *N. Penn Gas Co. v. Corning Natural Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990).

### B. Plaintiffs cannot prove that the Court has general jurisdiction over Defendants.

Plaintiffs do not allege that the Court has general jurisdiction over Kraken, Dunn, or Bickerstaff. Nor could they do so.

With respect to Dunn and Bickerstaff, the Court plainly does not have general jurisdiction over them as non-resident, individual defendants. Plaintiffs do not allege Dunn or Bickerstaff are residents of Pennsylvania. (Compl. ¶¶ 13-14.) Dunn and Bickerstaff also waived service through counsel. (Dkt No. 10). Defendants were not present in Pennsylvania when that waiver of service occurred this past summer. (Declaration of Andrew Dunn ¶ 5) ("Dunn Decl."); (Declaration of Joshua Bickerstaff ¶ 5) ("Bickerstaff Decl.") (**Exhibit 2**).

Nor does the Court have general jurisdiction over Kraken. In *Daimler AG v. Bauman,* 134 S. Ct. 746 (2014), the Supreme Court explained that, "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Id*. at 760. The Supreme Court confirmed that a corporation is not "at home" even in a "state in which [it] engages in a substantial, continuous, and systematic course of business[.]" *Id*. at 760–61 (internal quotation marks omitted). Based on *Daimler*, this Court cannot possibly exercise general personal jurisdiction over Kraken. Kraken is incorporated in Minnesota and has its principal place of business in Arizona. Dunn Decl. ¶¶ 7-8. Kraken's business activities take place

in Arizona. *Id.* ¶¶ 8-10. Kraken does not engage in any business, advertise, or communicate with consumers in Pennsylvania. *Id.* ¶¶ 10-15. Kraken has never advertised consumer loans products, never offered consumer loan products, never serviced consumer loan products, never been a counterparty on consumer loan products, including as to Plaintiffs, and has never collected debts owed on consumer loan products. *Id.* ¶ 16. Therefore, Kraken has no contact with Pennsylvania whatsoever. General jurisdiction is not possible under those facts.

### C. Plaintiffs cannot show that the Court has specific jurisdiction over Defendants.

As stated, Plaintiffs' sole allegation regarding this Court's jurisdiction over Defendants is that "their activities that give rise to the claims in this action have been directed at and in [Pennsylvania], conducted both directly and through their agents or alter egos." (Compl. ¶ 21.) The Complaint, however, provides no factual support for this assertion. Plaintiffs obtained their loans with the Tribe by accessing the Pine Tree/Clarity Finance website. (*Id.* ¶¶ 56, 60.) Plaintiffs declare that the website was "for all practical purposes … controlled by and for the profit of Defendants [Soaren and Kraken]." (*Id.* ¶ 4.) But the only allegations attempting to support this claim are (a) the "Soaren Defendants" manage the "chatbot" on the website (*id.* ¶ 38), and (b) the "Soaren Defendants" have purchased a website privacy service for the website (*id.* ¶ 45). Those sparse assertions, combined with the fact that Plaintiffs obtained their loans from the Tribe, fail to allege that Kraken, Dunn, or Bickerstaff directed any activities toward Pennsylvania, which they did not.[2] *See* Dunn Decl. ¶¶ 9-16, 23, 25; Bickerstaff Decl. ¶¶ 7-8.

Further, Plaintiffs cannot rely on allegations relating to the group "Soaren Defendants" generally to ameliorate the deficiencies in the Complaint. Plaintiffs must assert factual allegations

---

[2] The "chatbot" has Soaren's name in it, and Plaintiffs' allegation about the website privacy service is speculation because, logically, if someone purchased such a privacy service, Plaintiffs would not know who purchased that service.

showing that ***each*** of the Defendants' activities was directed at Pennsylvania. *See You Map, Inc. v. Snap Inc.*, 2021 U.S. Dist. LEXIS 139524, *13 n.7 (D. Del. July 27, 2021) ("As noted above, the FAC collectively defines Zenly Inc. and Zenly S.A.S. as 'Zenly,' but whether this Court has personal jurisdiction over Zenly S.A.S depends on the specific actions it took during the alleged events. It is impossible to tell from Plaintiff's group pleading whether Zenly S.A.S. is alleged to have distributed anything that ended up in Delaware and Plaintiff presents no evidence that it did."); *In re Aegean Marine Petroleum Network, Inc.*, 2021 U.S. Dist. LEXIS 59803, *36 (S.D.N.Y. March 29, 2021) ("To allege personal jurisdiction over a defendant, group pleading is not permitted. Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant.").

Finally, Plaintiffs undoubtedly will point to their assertion, "[u]pon information and belief," that Dunn and Bickerstaff are "responsible for designing, organizing, and implementing" Pine Tree Lending's operation, which provided loans to Plaintiffs. (Compl. ¶¶ 49, 101.) But, as explained in detail below, the Complaint is devoid of any factual allegations supporting that speculative assertion. Dismissal for lack of personal jurisdiction is required.

### D.   The RICO Act does not properly bring Defendants before the Court.

#### 1.   Plaintiffs cannot rely on 1965(b) because all Defendants are subject to personal jurisdiction in Arizona.

The Complaint also alleges that the Court has personal jurisdiction over Dunn, Bickerstaff, and Kraken under 18 U.S.C. § 1965(b). (Compl. ¶ 21.) Under § 1965(b), Plaintiffs must prove that the "ends of justice require that" these Defendants "be brought before the court." Plaintiffs, however, cannot invoke that "ends of justice" requirement unless there is *no* district court which would be appropriate as to *all* defendants. *Shulton, Inc. v. Optel Corp.*, 1986 U.S. Dist. LEXIS 19775, at *14 (D.N.J. Sept. 29, 1986) ("Generally, however, the ends of justice requirement is

fulfilled when venue is properly laid in the district in question under section 1965(a) at least as to one defendant, and there exists no other district in which venue would be appropriate as to all defendants."); *Eastman v. Initial Investments, Inc.*, 827 F. Supp. 336, 338 (E.D. Pa. 1993) ("'[T]he ends of justice' will hardly be threatened if I decline to exercise nationwide jurisdiction under section 1965(b) where venue is clearly proper as to every defendant in another district under section 1391(b).").

When adopting the rationale of a District of Delaware decision, the Ninth Circuit, in *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986), stated "[f]or nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *See also Lisak v. Mercantile Bancorp Inc.*, 834 F.2d 668, 671 (7th Cir. 1987).[3] "The rationale for allowing nationwide service of process in such circumstances is to avoid a 'jurisdictional gap', in which no single court could obtain jurisdiction in personam over all of the defendants." *Shulton Inc.*, 1986 U.S. Dist. LEXIS 19775, at *14. "The 'ends of justice' provision furthers the congressional purpose of 'eradicat[ing] organized crime in this country' by enabling plaintiffs 'to bring all members of a nationwide RICO conspiracy before a court in a single trial,' without unnecessarily sacrificing any defendant's interest in having the action litigated in a forum convenient to it." *Id.* at *14-15.

Based on the allegations in the Complaint, the United States District Court for the District of Arizona is a proper venue able to exercise jurisdiction over each Defendant. As set forth above,

---

[3] In *Laurel Gardens, LLC v. McKenna*, 948 F.3d 105 (3d 2020), the Third Circuit acknowledged that the Tenth Circuit has rejected this requirement. *Laurel Gardens* did not "decide whether the Ninth or the Tenth Circuit is correct" because unlike in this case, in *Laurel Gardens* there was no other district that could assert jurisdiction over all of the RICO defendants. *Id.* at 121.

Dunn, Bickerstaff, and Kraken clearly would be subject to the jurisdiction of the District of Arizona. The Complaint alleges that Defendant FactorTrust generates credit reports in response to credit inquires from Soaren, and those reports "triggered a [lending] decision by the automated decisioning component of the [Soaren] technology platform." (Compl. ¶¶ 53, 55, 57.) The credit reports that FactorTrust provided to Soaren were allegedly "an essential element of any loan approvals that occurred on or were connected to the Clarity Finance website that Soaren and Kraken operated." (*Id*. ¶ 54.) And, until its dissolution, Soaren was also located in and operated out of Arizona. FactorTrust's dealings with Soaren in Arizona, as alleged in the Complaint, would allow the District of Arizona to exercise specific jurisdiction over FactorTrust.

Moreover, even if the District of Arizona could not exercise jurisdiction over FactorTrust, the "ends of justice" do not require this Court to exercise jurisdiction over Dunn, Bickerstaff, or Kraken. Plaintiffs' claims are based on loans made by Tribe located in Maine that retained the services of a servicing company located in Arizona (Soaren) that is allegedly managed by a company with its principal place of business in Arizona (Kraken) and two Arizona residents (Dunn and Bickerstaff) and received credit reports from a company based in Georgia (FactorTrust). "There is no impediment to prosecution of a civil RICO action in a court foreign to some defendants if it is necessary, but the first preference, as set forth in § 1965(a), is to bring the action where suits are normally expected to be brought. Congress has expressed a preference in § 1965 to avoid, where possible, haling defendants into far flung fora." *PT United Can Co. v. Crown Cork & Seal Co.*, 138 F.3d 65, 71-72 (2d Cir. 1998).

Here, it is possible for Plaintiffs to prosecute its RICO claims in a single forum (the District of Arizona), while respecting traditional principles of personal jurisdiction. The fragile connection to this district is not significant enough to override all other notions of policy, fairness and

convenience, all of which point to the District of Arizona as the appropriate venue. Certainly, the individual defendants, who apparently are being sued merely because they were employees of an Arizona-based company, should not be forced to appear in Pennsylvania.

As all Defendants are subject to personal jurisdiction in Arizona and the "ends of justice" are better served there, this Court should decline to exercise jurisdiction.

## II. Plaintiffs have failed to allege adequate factual support for their RICO claims against Dunn, Bickerstaff, and Kraken.

### A. Standard of Review.

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Third Circuit requires this Court to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement

to relief." *Elnaggar v. Allard*, 2021 U.S. Dist. LEXIS 63855, at *4-5 (E.D. Pa. Mar. 31, 2021) (citing *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016)).

### B.    Courts require that RICO claims be supported by a "fuller set" of factual allegations.

Counts One and Two of the Complaint assert claims under 18 U.S.C. § 1962(c) of the RICO Act against Dunn, Bickerstaff, and Kraken.  While the Complaint "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, and raise a right to relief above the speculative level," "[t]he level of detail the complaint must furnish can differ depending on the type of case."  *Smith v. Boehringer Ingelheim Pharms., Inc.*, 886 F. Supp. 2d 911, 922 (S.D. Ill. 2012).  "So for instance, a complaint involving complex litigation (antitrust or RICO claims) may need a 'fuller set of factual allegations ... to show that relief is plausible.'" *Id.* (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).  Thus, "a defendant should not be put to the expense of big-case discovery on the basis of a threadbare [RICO] claim.'" *Macauley v. Estate of Nicholas*, 7 F. Supp. 3d 468, 488 (E.D. Pa. 2014) (quoting *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 (3d Cir. 2010)).

### C.    The sparse allegations relating to Dunn and Bickerstaff are insufficient to state a RICO claim against them.

To have an actionable claim under § 1962(c) of the RICO Act, Plaintiffs must prove four elements as to each Defendant: "(1) the existence of an enterprise engaged in or affecting interstate commerce; (2) the defendant was employed by or associated with the enterprise; (3) the defendant participated, directly or indirectly, in the conduct or the affairs of the enterprise; and (4) the defendant participated through a pattern of racketeering activity that must include at least two racketeering acts."  *Blue Cross Blue Shield Ass'n v. Glaxosmithkline LLC*, 417 F. Supp. 3d 531, 560 (E.D. Pa. 2019).  "To establish the third element of a § 1962(c) claim, the plaintiff must show

the defendant 'participated in the operation or management of the enterprise.'" *Id*. (quoting *In re Ins Brokerage Antitrust Lit.*, 618 F.3d 300, 371).

> **i.      Plaintiffs fail to allege any conduct by Dunn or Bickerstaff apart from their status as employees of Soaren, or what "racketeering" activity they are alleged to have engaged in.**

Plaintiffs have failed to satisfy the pleading standard regarding the RICO claims against Dunn and Bickerstaff. The factual allegations relating to them are sparse and undeveloped. The 27-page, 132-paragraph Complaint specifically refers to each Defendant only seven times. Dunn is alleged to be Soaren's CEO; Bickerstaff is alleged to be Soaren's COO. (Compl. ¶¶ 13-14.) Plaintiffs' primary allegation was made "[u]pon information and belief" that, "as directors of [Soaren]," they are "responsible for designing, organizing, and implementing" Pine Tree Lending's operation. (*Id*. ¶¶ 49, 101.) Plaintiffs further allege that Dunn and Bickerstaff, among others, "were members of an internet lending enterprise (the "PTL Lending Organization"), whose members and associates engaged in the collection of unlawful debt." (*Id*. ¶ 100.) Dunn and Bickerstaff, among others, allegedly "led, controlled, and/or managed" the PTL Lending Organization. (*Id*. ¶ 104.)

Taken together, these scant allegations factually assert only that Dunn and Bickerstaff were employees of Soaren, which was hired by the Tribe's lending entity, Pine Tree Lending, to service the Tribe's lending business. Yet being a vendor (Soaren) to a purported enterprise is not enough. "Simply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable under RICO as a result." *University of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993). Certainly being an employee of a vendor is not enough: there are no factual allegations explaining how either Dunn or Bickerstaff designed,

organized, or implemented the Tribe's lending business.[4]  *See Lima LS PLC v. PHLVariable Ins.*
*Co.*, 2013 U.S. Dist. LEXIS 91849, at *33 (D. Conn. July 1, 2013) (dismissing RICO claims
against corporate officers because "Plaintiff appears to rely upon the corporate positions of the
Individual Defendants to indicate their ability to direct or manage the enterprise.").

In addition, Plaintiffs' allegation that Dunn and Bickerstaff designed etc. the lending
business as "directors" of Soaren is made solely "upon information and belief," and thus should
not be given any weight.  *See Scott v. Experian Info. Sols., Inc.*, 2018 U.S. Dist. LEXIS 110210,
2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("Conclusory allegations made upon
information and belief are not entitled to a presumption of truth, and allegations stated upon
information and belief that do not contain any factual support fail to meet the *Twombly* standard.").
Allegations that are made upon "information and belief," without factual support, do not allow the
court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."
*Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1268 (11th Cir. 2009).  The fact that core allegations
are pled on information and belief demonstrates the Complaint does not state a "plausible" claim
under *Twombly.  See, e.g.*, *Wright v. Lehigh Valley Hosp. & Health Network, Inc.,* 2011 WL
2550361, at *3 (E.D. Pa. June 23, 2011).  Similarly, there are no factual allegations explaining
how Dunn or Bickerstaff "led, controlled, and/or managed" the PTL Lending Organization, as
opposed to merely managing Soaren as its CEO and COO.  Plaintiffs' assertions are nothing more
than speculation.

Plaintiffs also fail to allege which racketeering activities, if any, Dunn or Bickerstaff
specifically engaged in as part of the alleged RICO enterprise, which also requires dismissal of the
RICO claims against them.  *See, e.g.*, *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("The

---

[4] Indeed, Plaintiffs' allegation that the Tribe "hired" Soaren to be its servicer (Compl. ¶ 101) asserts that the Tribe,
not Dunn or Bickerstaff, created its own lending business.

requirements of section 1962(c) must be established as to each individual defendant."). Instead, Plaintiffs allege that the group "Soaren Defendants," *i.e.*, Soaren, Kraken, Dunn, and Bickerstaff, engaged in the alleged racketeering conduct. This style of pleading cannot save the pleading deficiencies as the allegations "do not indicate individually which of the [Defendants] actually engaged in the particular predicate acts that Plaintiffs allege constitutes a pattern of racketeering. Such 'group pleading' does not comply with the requirements of RICO ...." *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009); *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987), *cert. denied*, 486 U.S. 1022 (1988) ("The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d).").

      ii.    **Plaintiffs fail to allege that Dunn or Bickerstaff participated in the alleged "enterprise's" affairs, as opposed to their own affairs.**

The dearth of actual, factual allegations relating to Dunn and Bickerstaff require dismissal of the RICO claims because the Complaint does not sufficiently allege that Dunn and Bickerstaff "'conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs.'" *Cedric Kushner Promotions, LTD v. King*, 533 U.S. 158, 163 (2001) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (emphasis in original)).

The few allegations relating to Dunn and Bickerstaff indicate that they are connected to the alleged RICO enterprise, the PTL Lending Organization, only because they were employees of Soaren. In other words, Plaintiffs allege that Dunn and Bickerstaff, as directors or officers or employees of Soaren, "merely conducted their own business affairs," as opposed to distinctly participating in the conduct of the PTL Lending Organization. *Friedland v. Unum Group*, 50 F. Supp. 3d 598, 604 (E.D. Pa. 2014) (dismissing RICO claim because defendant was alleged to have merely conducted its own business affairs); *Metcalf v. PaineWebber Inc.*, 886 F. Supp. 503, 513-

14 (W.D. Pa. 1995), *aff'd without op.,* 79 F.3d 1138 (3d Cir. 1996) (stating that in order "to satisfy the enterprise requirement, a complaint must include an allegation that the enterprise included some person or entity operating outside of the . . . defendants' normal scope of business"). Merely being an employee does not make someone a member of an enterprise.

At bottom, the Complaint offers no factual allegations to support their sweeping assertions, much less a "fuller set" of allegations that are required to support RICO claims. Instead, the Complaint only provides innuendo and speculation, along with a "formulaic recitation" of the elements of a RICO claim. Therefore, the RICO claims against Dunn and Bickerstaff should be dismissed. *See Hlista v. Safeguard Props., LLC,* 649 Fed. Appx. 217, 222 n.11 (3d. Cir. 2016) (affirming dismissal of RICO claim because plaintiffs "merely repeat the elements of a RICO enterprise without providing supporting facts").

### D. The factual allegations against Kraken are equally insufficient to support a RICO claim.

Remarkably, the allegations against Kraken have even less substance. Plaintiffs assert that Kraken is registered as the "manager" of Soaren on the Nevada Secretary of State website, from which Plaintiffs conclude that Kraken is "responsible" for Soaren's operations. (Compl. ¶¶ 12, 101.) Kraken and Soaren share a mailing address. (*Id*. ¶¶ 50, 57.) Plaintiffs in their "Introduction" speculate that the Tribe's lending website was "controlled by and for the profit of" Soaren and Kraken. (*Id*. ¶¶ 4.) Also in their "Introduction," Plaintiffs hypothesize that the interest paid by Plaintiff Dearry to the Tribe purportedly "ended up as revenue to [Soaren] and [Kraken]." (*Id*. ¶ 6.)[5] Like Dunn and Bickerstaff, Kraken is alleged to be a member and associate of the PTL

---

[5] Plaintiffs start their "Factual Allegations" at paragraph 23. Therefore, the speculation contained in their "Introduction" cannot be considered "facts" relevant to satisfy their pleading burden under *Twombly.*

Lending Organization (*Id.* ¶ 100) and to have managed the PTL Lending Organization (*Id.* ¶ 104.) That is the total of the allegations against Kraken.

The allegations against Kraken that allegedly tie it to the enterprise are either speculation or conclusions – neither or which rise to the pleading level under *Twombly* and *Iqbal* (conclusory statements are not enough to defeat a Motion to Dismiss.) There are simply no **factual** allegations showing: (a) how the website was alleged controlled by Kraken or how Kraken profited by it; (b) how any interest paid to the Tribe ended up as revenue to Kraken; or (c) how Kraken allegedly "managed" the PTL Lending Organization. The Complaint fails to sufficiently allege any action, whatsoever, that Kraken took to participate in the affairs of the alleged RICO enterprise. Nor does the Complaint allege the nature of Kraken's business beyond "managing" Soaren. Therefore, the Complaint fails to sufficiently allege that Kraken participated in the affairs of the alleged RICO enterprise rather than conducting its' own affairs. *See Cedric Kushner Promotions*, *Friedland*, and *Metcalf*, *supra*. In fact, it appears that Plaintiffs included Kraken in this lawsuit not because of any actions Kraken took, but merely because Kraken is alleged to have been a manager of Soaren. Merely having the status of "manager" is not enough to adequately state a RICO claim. *See Lima LS*, *supra*. Likewise, lumping Kraken in with the group "Soaren Defendants" cannot resuscitate the Complaint as to Kraken.

### E. The Complaint fails to allege the predicate act of mail fraud with the required specificity.

The RICO claim asserted in Count Two relies on the predicate act of wire fraud. Plaintiffs allege that the Tribe's collection of loan payments constituted a "scheme and artifice to obtain revenues by means of fraudulent pretenses and representations" using interstate wires (Compl. ¶ 113.) However, Plaintiffs do not allege any fraudulent conduct in connection with the loan agreements nor that the loan agreements contained misrepresentations. Instead, they can only

narrowly allege "a system of repetitive robocalls, sent from disguised numbers" directed to those consumers who took out loans from the Tribe, without any further detail. *Id.*

"Where, as here, plaintiffs rely on … wire fraud as a basis for a RICO violation, the allegations of fraud must comply with Federal Rule of Civil Procedure 9(b), which requires that allegations of fraud be pled with specificity." *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.' Plaintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* (internal citations omitted). The Complaint is devoid of these necessary particulars, including which Defendant committed which alleged act. In fact, Plaintiffs admit that they do not know whether any of the Defendants made the alleged robocalls. (Compl. ¶ 126) ("Whoever it is that has been robocalling Plaintiff Green …"); Compl. ¶ 113 (robocalls sent from "disguised numbers"). Plaintiffs simply do not allege the "fraud" in "wire fraud." Accordingly, Count Two must be dismissed. *See Lam*, 361 F.3d at 225 (holding that allegations did not satisfy Rule 9(b) "because they do not indicate the date, time, or place of the alleged misrepresentations, the financial transactions in connection with which these misrepresentations were made, or who made the misrepresentation to whom").

F. **Because Counts One and Two fail, Count Three asserting a conspiracy to violate § 1962(c) must be dismissed.**

Count Three asserts a claim against Dunn, Bickerstaff, and Kraken under 18 U.S.C. § 1962(d), which makes it unlawful to engage in a conspiracy to violate § 1962(c). "A § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 373 (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). For

the reasons discussed above, the Complaint fails to allege an actionable claim under § 1962(c), so its conspiracy claim, Count Three, must be dismissed. *See Friedland*, 50 F. Supp. 3d at 605 ("The court has already determined that plaintiff's § 1962(c) claim is legally insufficient. Accordingly, plaintiffs claim for conspiracy under § 1962(d) is dismissed.").

### III. Plaintiffs have failed to adequately allege a claim under the FDCPA.

Count Four of the Complaint asserts a claim against the "Soaren Defendants" under the FDCPA. To establish a *prima facie* case under the FDCPA, a plaintiff must prove: (i) he or she is a natural person who is harmed by violations of the FDCPA— a "consumer" within the meaning of 15 U.S.C. §§ 1692a(3)—for purposes of a cause of action; (ii) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes; (iii) the defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6); and (iv) the defendant has violated, by act or omission, a provision of the FDCPA. *See Goins v. MetLife Home Loans*, 2014 U.S. Dist. LEXIS 152014, at *3 (E.D. Pa. 2014). Plaintiffs' allegations do not satisfy these elements.

First, Plaintiffs do not even know if any of the Soaren Defendants committed the alleged violations of the FDCPA. The Complaint alleges:

> *Whoever* it is that has been robocalling Plaintiff Green and similarly situated class members—*whether the named Soaren Defendants or a third party John Doe is deliberately hiding its identity*—is a "debt collector."

(Compl. at ¶ 126 (emphases added).) Plaintiffs cannot sustain a cause of action by guessing that a Defendant, (but maybe a third party) violated the FDCPA. *See ManorCare of Easton PA LLC v. Estate of Nagy*, 2017 U.S. Dist. LEXIS 161722, at *7 (E.D. Pa. Sep. 29, 2017) (refusing to infer from the general facts of the complaint that the defendant violated the FDCPA).

Second, even if Plaintiffs had identified actions taken by the Soaren Defendants and not some unknown party, Plaintiffs still have not alleged that any of the Soaren Defendants is, in fact,

a "debt collector." "[A] formulaic recitation of the first sentence of the definition of 'debt collector'" in a plaintiff's complaint is insufficient to allege whether an entity is a debt collector under the FDCPA and "[fails] to meet the pleading standard described in *Twombly*." *Major v. Kochalski*, 2016 U.S. Dist. LEXIS 171579, at *5 n.18 (E.D. Pa. Dec. 12, 2016).

Third, Plaintiffs' FDCPA allegations only refer to the Soaren Defendants generally, which is insufficient to assert an actionable FDCPA claim against them individually. *See Stransky v. PennyMac Holdings, LLC*, 2019 U.S. Dist. LEXIS 168772, *13-14 (D.N.J. Sept. 30, 2019) (dismissing FDCPA claim when plaintiff relied on group pleading).

Lastly, Plaintiffs provide no factual allegations to support the alleged violations of the FDCPA listed in paragraph 127 of the Complaint - such as the specific defendant which attempted to collect, or details about the dates, times, and manner of the communications this unknown defendant made to Plaintiff Green in attempting to collect on the alleged debt—which would allow the Court to draw the reasonable inference that one or more of the Soaren Defendants' actions violated any provision of the FDCPA. *See Jung v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 102247, 2016 WL 5929273, at *9 (M.D. Pa. Aug. 2, 2016) (dismissing FDCPA claims because Plaintiff merely offered a "formulaic recitation of acts prohibited by the FDCPA."). Simply stated, Plaintiffs' failure to assert that any Defendant attempted to collect any debt, and their threadbare formulaic recitation of the elements of an FDCPA claim, is insufficient.

## IV. Plaintiffs' unjust enrichment claim should be dismissed as to Defendants.

The final count in the Complaint asserts a claim for unjust enrichment against all Defendants. To state a claim for unjust enrichment claim, Plaintiffs must prove the following elements: (1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would

be inequitable for defendant to retain the benefit without payment of value. *See Mitchell v. Moore*, 1999 PA Super 77, 729 A.2d 1200, 1203-4 (Pa. Super. 1999).

"The doctrine does not apply simply because the defendant may have benefited as a result of the actions of the plaintiff." *Styer v. Hugo*, 422 Pa. Super. 262, 619 A.2d 347 (1993), *aff'd*, 535 Pa. 610, 637 A.2d 276 (1994). "In order to sue in assumpsit for unjust enrichment, a plaintiff must establish that a defendant has received money which rightfully belongs to the plaintiff. There must be some privity between the parties with relation to the money sought to be recovered. The defendant must have received money which belongs to the plaintiff." *Weiner v. Bank of King of Prussia*, 358 F. Supp. 684, 704 (E.D. Pa. 1973).

In support of their claim, Plaintiffs allege that "Defendants have been unjustly enriched by their continued possession of funds illegally taken from Plaintiffs," and that in "equity and good conscience, those funds collected in excess of the legal rate of interest" under Pennsylvania law should be returned to Plaintiffs. (Compl. ¶¶ 131-132.) Plaintiffs, however, do not make any factual allegation that Dunn or Bickerstaff ever received the alleged excess interest, if any, paid by Plaintiffs. Therefore, the unjust enrichment claim must be dismissed as to Dunn and Bickerstaff. With respect to Kraken, the Complaint only indicates that the interest was paid to the Tribe, "most of which ended up as revenue to [Soaren] and [Kraken]." (*Id.* ¶ 6.) That statement is mere conclusion/speculation, only stated in the Introduction, with no factual underpinning. Accordingly, Count Five should be dismissed as it relates to Kraken.

## CONCLUSION

For these reasons, Defendants Kraken, Dunn, and Bickerstaff respectfully request that the Court enter an ordering dismissing the claims against them pursuant to Rule 12(b)(2), or alternatively, pursuant to Rule 12(b)(6).

Dated:  September 24, 2021

_s/ Justin G. Weber_
Justin G. Weber (PA 89266)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
100 Market Street, Suite 200
Harrisburg, PA  17101
717.255.1155
Justin.Weber@troutman.com

Christopher W. Wasson (PA 63551)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103
215.981.4000
Christopher.Wasson@troutman.com

David N. Anthony, Esq. (Admitted PHV)
Michael E. Lacy, Esq. (Admitted PHV)
TROUTMAN PEPPER
HAMILTON SANDERS LLP
1001 Haxall Point
Richmond, VA  23219
804-697-1200
David.Anthony@troutman.com
Michael.Lacy@troutman.com

## CERTIFICATE OF SERVICE

I, Justin G. Weber, hereby certify that on September 24, 2021, the foregoing document was filed through the Court's Electronic Case Filing (ECF) system and that the following individuals are registered to receive notice of this filing through ECF:

> Andrew J. Guzzo, Esq.
> KELLY & CRANDALL PLC
> 4084 University Drive, Suite 202A
> Fairfax, VA  22030
> aguzzo@kellyguzzo.com
>
> James Patrick McNichol, Esq.
> Kristi C. Kelly, Esq.
> KELLY GUZZO, PLC
> 3925 Chain Bridge, Suite 202
> Fairfax, VA  22030
> jmcnichol@kellyguzzo.com
> kkelly@kellyguzzo.com
>
> Irv Ackelsberg
> LANGER GROGAN & DIVER PC
> 1717 Arch Street, Suite 4020
> Philadelphia, PA  19103
> iackelsberg@langergrogan.com
>
> ***Attorneys for Plaintiffs***
>
> Samantha L. Southall
> BUCHANAN INGERSOLL & RONEY PC
> 50 S. 16th Street, Suite 3200
> Two Liberty Place
> Philadelphia, PA  19102
> 215-665-3884
> Samantha.southall@bipc.com
>
> ***Attorney for FactorTrust, Inc.***

*s/ Justin G. Weber*
Justin G. Weber
